UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Allan Block Corporation,

       Plaintiff,

v.

                                              Civ. No. 05-2879 (JNE/JJG)
                                              ORDER

County Materials Corp., and
Champaign Concrete Company, Inc.
d/b/a Illinois Concrete Company, Inc.,

       Defendants.

---

Kurt J. Niederluecke, Esq., and Darren B. Schwiebert, Esq., Fredrikson & Byron, PA, appeared for Plaintiff Allan Block Corporation.

Gary A. Ahrens, Esq., Michael Best & Friedrich LLP, and Chad Drown, Esq., Faegre & Benson LLP, appeared for Defendant County Materials Corp.

Frank S. Farrell, Jr., Esq., F S Farrell, LLC, appeared for Defendant Champaign Concrete Company, Inc. d/b/a Illinois Concrete Company, Inc.

---

Allan Block Corporation brought this case against County Materials Corp. and Champaign Concrete Company, Inc. d/b/a Illinois Concrete Company, Inc. (ICCI)[1] (collectively, Defendants) for patent infringement and breach of contract. The case is before the Court on County Materials' motion to dismiss or, in the alternative, to transfer venue or stay, and ICCI's motion to dismiss.[2] For the reasons set forth below, the Court denies County Materials' and ICCI's motions.

---

[1] After selling its assets to County Materials in March 2005, Illinois Concrete Company, Inc., changed its name to Champaign Concrete Company, Inc. For present purposes, the Court refers to Champaign Concrete and Illinois Concrete Company, Inc. as ICCI.

[2] Also before the Court is Allan Block's motion to file supplemental evidence. The Court grants Allan Block's motion.

## I.      BACKGROUND

Allan Block is a Minnesota corporation, with its principal place of business in Edina, Minnesota.  Allan Block is involved in the development and licensing of a cement block and related technology for use in the construction of segmental retaining walls.  Allan Block owns United States Patent Nos. 5,484,236 and 4,909,010, titled "Method of Forming Concrete Retaining Wall Block" and "Concrete Block for Retaining Walls," respectively.

County Materials is a Wisconsin corporation, with its principal place of business in Eau Claire, Wisconsin.   ICCI is an Illinois corporation, with its principal place of business in Champaign, Illinois.

In April 1993, Allan Block entered into a production agreement with County Concrete Corporation, who subsequently assigned its interest under the agreement to County Materials.  In March 1994, Allan Block entered into a production agreement with ICCI.  Both agreements granted Defendants a license to use and possess Allan Block molds and technology for the purpose of manufacturing and selling Allan Block blocks.  Upon termination of each production agreement, Defendants agreed they would: (1) immediately cease using Allan Block technology, including its molds; (2) immediately return Allan Block technology, including its molds; and (3) immediately cease manufacturing Allan Block blocks.

On November 16, 2005, County Materials brought a declaratory judgment action against Allan Block in the United States District Court for the Western District of Wisconsin (Wisconsin action).  The Wisconsin action involves the validity of a non-competition clause contained in the

1993 production agreement between Allan Block and County Materials.[3]   In the Wisconsin action, County Materials alleges that it intends to manufacture, distribute, and sell a mortarless, stackable, concrete block that does not infringe any Allan Block patent.  County Materials seeks an order declaring that the non-competition clause in the 1993 production agreement is unenforceable.  Allan Block answered the complaint and asserted several affirmative defenses, one being that County Materials is barred from obtaining relief because of its own prior breach of the agreement.  ICCI is not a party to the Wisconsin action.  Trial in the Wisconsin action is scheduled for June 14, 2006.

On December 12, 2005, Allan Block brought the current action against Defendants, alleging infringement of its patents and breaches of the parties' respective production agreements.  In its Complaint, Allan Block alleges that Defendants were parties to separate production agreements under which they received licenses to manufacture and sell Allan Block blocks; that Allan Block provided Defendants with molds, designs, and technology for the production of the Allan Block blocks; that Defendants agreed upon termination they would immediately return Allan Block technology and molds and cease manufacturing Allan Block blocks; that Allan Block terminated the agreements; and that after termination Defendants failed to return Allan Block molds and technology and continued to manufacture and sell Allan Block blocks.

---

[3]      The clause provides:

> The parties agree that during the term of this agreement, and for a period of eighteen months following the termination of this agreement, [County Materials] will not directly or indirectly engage in the manufacture and/or sale of any other mortarless, stackable, concrete block retaining wall product, with the following exceptions . . . .

## II.   DISCUSSION

**A.   County Materials' motion to dismiss**

County Materials argues that this case should be dismissed or, in the alternative, transferred or stayed pursuant to the first-filed rule and in the interests of judicial economy because this action is parallel to the Wisconsin action. Allan Block argues that the first-filed rule is not applicable here because the current action and the Wisconsin action are not parallel.

The parties agree that the first-filed rule "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993). Here, there is no dispute that the Wisconsin action was filed first and that jurisdiction attached in the Western District of Wisconsin.

The Court turns to whether the two cases involve parallel proceedings. To constitute parallel litigation, courts look to whether the concurrent cases involve the same parties and issues. *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 896 F. Supp. 1468, 1476 (N.D. Iowa 1995). To determine whether the same issues are present in two concurrent federal actions, the court does not require a precise identity of issues. *See id.* Rather, the focus is whether there is a danger of inconsistent results and a duplication of judicial proceedings. *See id.*; *see also Nw. Airlines*, 989 F.2d at 1006 (noting the first-filed rule serves to "conserve judicial resources and avoid conflicting rulings").

County Materials argues that the current action and the Wisconsin action involve substantially the same issues. In support, County Materials asserts that both cases involve the same production agreement and require resolution of the issue of whether County Materials is infringing Allan Block's patents. Specifically, County Materials argues that the issue of

infringement must be decided in the Wisconsin action because it asserts that the enforceability of Allan Block's non-competition clause depends on whether Allan Block is attempting to extend the scope of its patent monopoly by applying the non-compete to non-infringing products.  Allan Block disputes that the two cases are parallel, arguing that the single-count in the Wisconsin action for declaratory relief regarding the validity of a non-competition clause does not share common factual or legal issues with the current action, which focuses on different contractual provisions and includes patent infringement claims.

For the reasons discussed below, the Court concludes that this action and the Wisconsin action do not involve factual or legal issues that if litigated in different forums will create a danger of conflicting rulings or the duplication of judicial proceedings.  First, the Court points out that the two actions involve distinct legal theories.  The Wisconsin action raises a single issue – the enforceability of the non-competition clause.  In contrast, the action before this Court involves Allan Block's claims that Defendants infringed its patents by continuing to manufacture Allan Block blocks after termination of the agreements and that Defendants breached the respective agreements by both failing to return Allan Block molds and technology and continuing to manufacture and sell Allan Block blocks.  Allan Block has not asserted a breach of a non-competition provision in this case.  In addition, there are no patent infringement claims or breach of contract claims based on the failure of County Materials to return Allan Block molds and technology being litigated in the Wisconsin action.  Thus, there is no question that Allan Block is asserting claims in this forum that are not asserted in the Wisconsin action.  Moreover,

the outcome of the claims asserted in this case does not rest on the same legal and factual questions before the Wisconsin Court.[4]

Second, the Court notes that trial in the Wisconsin action is scheduled for June 2006. If the Court were to transfer the claims against County Materials to the Western District of Wisconsin, the parties would have to conduct additional discovery on Allan Block's contract and patent infringement claims and the trial would almost certainly be delayed. Moreover, because this Court is currently presiding over *Allan Block Corp. v. E. Dillon & Co.*, Civ. No. 04-3511, it is already familiar with the patents and the provisions of the production agreement at issue in this case. Thus, judicial economy would be served by keeping the current case before this Court.

Finally, should the district court in Wisconsin make any determinations that have a preclusive effect on any issue in this case, the parties will be able to present the Court with any *res judicata* or issue preclusion arguments in the future. The current action was filed in December 2005. As of the motion hearing, discovery had not yet begun. Therefore, there will be ample time to resolve any such issues that may arise after completion of the trial in the Wisconsin action.

In sum, this action is not parallel to the Wisconsin action. Therefore, the Court denies County Materials' motion to dismiss or, in the alternative, to transfer venue or stay this action.

---

[4] The Court acknowledges that County Materials has argued in the Wisconsin action that the enforceability of Allan Block's non-competition clause will require an infringement analysis with respect to Allan Block's patents and County Materials' new block. However, by Order dated March 30, 2006, the district court in the Wisconsin action granted a motion by Allan Block to strike all facts and legal argument regarding the issue of whether County Materials' new block infringes Allan Block patents. Thus, on the record before this Court, it appears that the issue of patent infringement will not be decided in the Wisconsin action. Moreover, the Wisconsin action involves County Materials' intent to manufacture a new block that is allegedly designed around Allan Block patents. The patent claims in this action, in contrast, relate to County Materials' alleged manufacture of Allan Block blocks after termination of the production agreement.

**B.      ICCI's motion to dismiss**

*1.      Personal jurisdiction*

ICCI asserts that the Court lacks personal jurisdiction over it.  Allan Block has asserted both contract and patent infringement claims against ICCI.  The parties agree that Federal Circuit law regarding due process applies when assessing the Court's jurisdiction over ICCI with respect to Allan Block's patent claims.  *See 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1997); *Multi-Tech Sys., Inc. v. VocalTec Commc'ns., Inc.*, 122 F. Supp. 2d 1046, 1049 (D. Minn. 2000).  The parties dispute whether Federal Circuit or Eighth Circuit law applies in assessing the Court's jurisdiction over ICCI with respect to Allan Block's contract claims.

Where a suit involves both patent and non-patent claims, Federal Circuit due process law applies to the question of personal jurisdiction on non-patent claims if the resolution of the patent infringement issue will be a significant factor in determining liability under the non-patent claims.  *See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, Civ. Nos. 05-1221, 05-1428, 2006 WL 895208, at *3 (Fed. Cir. April 7, 2006) (citing *3D Sys.,* 160 F.3d at 1377); *cf. Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003) (applying regional circuit law where non-patent declaratory claims of non-misappropriation of trade secrets and non-breach of a non-disclosure agreement did not present questions "intimately involved with" the substance of the patent laws).

In Count III of its Complaint, Allan Block alleges that ICCI breached the 1994 production agreement with Allan Block, under which it received a license to manufacture and sell Allan Block blocks, by failing to return certain technology and continuing to manufacture Allan Block blocks after the agreement terminated.  In Counts I and II of its Complaint, Allan Block alleges ICCI infringed its patents by continuing to manufacture and sell Allan Block

blocks after the termination of the agreement.  Here, at least one aspect of Allan Block's contract claim, namely whether ICCI continued to manufacture and sell Allan Block blocks after the termination of the production agreement, presents questions that are "intimately involved with" Allan Block's patent infringement claims and, therefore, the substance of the patent laws.  In particular, both Allan Block's patent and contract claims involve questions relating to the termination of the production agreement and the alleged continued production of Allan Block blocks.  Accordingly, the Court applies Federal Circuit law governing personal jurisdiction to all of Allan Block's claims.

When the district court's disposition as to personal jurisdiction is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only establish a prima facie case that the forum state has personal jurisdiction over the defendant.  *Elecs. for Imaging,* 340 F.3d at 1349; *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002).  In addition, on a motion to dismiss, the court must accept the uncontroverted allegations of the plaintiff's complaint as true and resolve any factual conflicts in the plaintiff's favor.  *Elecs. for Imaging,* 340 F.3d at 1349.

When making a determination of whether the Court has personal jurisdiction over a defendant, the Court must determine whether the Minnesota long-arm statute permits service of process and whether the assertion of jurisdiction would be inconsistent with due process.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-76 (1985); *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001).  Minnesota courts have consistently held that the Minnesota long-arm statute "reaches as many extraterritorial defendants as the Due Process Clause will allow."  *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998); *see also Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 410 (Minn. 1992).  The

Court therefore need only consider whether the requirements of due process are satisfied to resolve ICCI's jurisdictional challenge. *See Red Wing Shoe*, 148 F.3d at 1358.

Due process allows a court to exercise personal jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The defendant's contacts with the state must be such that the defendant should reasonably anticipate being haled into court there. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) (explaining that the purposeful minimum contacts requirement helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum). "[W]here the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between [itself] and residents of the forum, [it] manifestly has availed [itself] of the privilege of conducting business there, and because [its] activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require [it] to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 475-76 (citations and quotations omitted).

Under the minimum contacts analysis, a defendant may be subject to either specific or general jurisdiction. *LSI Indus.*, 232 F.3d at 1375. General jurisdiction arises when a defendant maintains "continuous or systematic" contacts with the forum state even when the cause of action has no relation to those contacts. *Id.* A defendant may be subject to specific jurisdiction

if the plaintiff's claims arise out of or relate to the defendant's contacts with the forum state, even if those contacts are isolated and sporadic. *Id.*

The Court turns to Plaintiffs' argument that the Court may properly assert specific jurisdiction over ICCI. The Federal Circuit has adopted a three-factor test for analyzing due process requirements for specific jurisdiction. The Court must determine whether (1) the defendant purposefully directed its activities at residents of the forum state; (2) the claim arises out of or relates to the defendant's activities with the forum state; and (3) assertion of personal jurisdiction is reasonable and fair. *Elecs. for Imaging*, 340 F.3d at 1350 ("The first two factors correspond to the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor with the 'fair play and substantial justice' prong." (citation omitted)). Allan Block bears the burden of establishing minimum contacts and, upon making this showing, ICCI must demonstrate that the exercise of jurisdiction is unreasonable. *See id.*

As to the first factor, Allan Block has submitted evidence of contacts between ICCI and residents of Minnesota, particularly contacts made during the course of ICCI's eleven-year business relationship with Allan Block. In 1994, ICCI entered into a production agreement with Allan Block. The agreement was negotiated at least in part in Minnesota[5] and contemplated significant and regular interaction between ICCI and Allan Block in Minnesota. For example, under the agreement, ICCI was obligated to furnish monthly sales reports and royalties to Allan Block in Minnesota. Allan Block has submitted evidence that ICCI sent monthly sales reports

---

[5]     Allan Block has submitted evidence that the parties began negotiating the agreement at a trade show outside of Minnesota, where the General Manager of ICCI approached Allan Block's president and inquired about the possibility of becoming a licensed producer of Allan Block blocks. The parties then negotiated the agreement by telephone, such that part of the negotiation took place in Minnesota.

and royalty payments to Allan Block's offices in Minnesota.  The royalty payments since 1994 exceeded $1.2 million and between 2000 and 2005, averaged approximately $125,000 per year.

Allan Block also asserts through affidavit testimony that ICCI engaged in ongoing communications with Allan Block in Minnesota.  In particular, Allan Block has submitted evidence that ICCI personnel engaged in regular and frequent communications with Allan Block about the manufacture and use of Allan Block blocks and that ICCI purchased marketing materials and information manuals from Allan Block throughout the parties' eleven-year contractual relationship by mailing purchase orders to Allan Block in Minnesota.  In addition, Allan Block has submitted evidence that ICCI employees traveled to Minnesota on numerous occasions.  For example, ICCI's president attended at least two producer meetings in Minnesota and at least thirteen other ICCI employees traveled to Minnesota on more than twenty separate occasions to meet with Allan Block personnel and to take part in Allan Block training sessions.

Finally, the production agreement contained a choice-of-law clause providing that it "shall be interpreted under and governed by the law of the State of Minnesota."  While a choice of law provision alone is not sufficient to confer jurisdiction, Courts do consider such provisions when determining whether a defendant has purposefully invoked the benefits and protections of a State's law for jurisdictional purposes.  *See Burger King*, 471 U.S. at 482 (noting that choice-of-law provision, when combined with twenty-year relationship with forum resident, reinforced defendant's deliberate affiliation with forum state).

Based on the above evidence, the Court finds that Allan Block has demonstrated that certain obligations under the production agreement required direct and substantive contacts with Allan Block in Minnesota.  Moreover, ICCI had regular and significant interaction with Allan Block in Minnesota over the course of the parties' eleven-year contractual relationship.  The

Court concludes that ICCI purposefully directed its activities at a resident of Minnesota. *See Breckenridge*, 2006 WL 895208, at \*8 (holding purposeful availment established where defendant sent letters into forum state and entered into an exclusive license which actually resulted in an ongoing relationship beyond royalty payments with a company that conducted business in forum state); *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995) (holding defendant purposefully directed its activities at residents of forum state where it sent resident a warning letter regarding the infringement of a patent and entered into an exclusive license agreement with a third party regarding the patent).

As to the second factor, ICCI argues that there are no allegations that Allan Block's claims arise from ICCI's activities in Minnesota.  Specifically, ICCI claims that it did not make, use, offer for sale, sell, or otherwise infringe Allan Block's patents within Minnesota; its activities with regard to selling Allan Block blocks did not occur in Minnesota; and no alleged breaches of the contract are alleged to have occurred in Minnesota.  The Federal Circuit has noted that the second prong of the jurisdictional test for a patent infringement claim requires an accusation that a defendant "without authority makes, uses, offers to sell or sells any patented invention" within the forum.  *See HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed. Cir. 1999).  However, in *Electronics for Imaging*, the Federal Circuit found personal jurisdiction over a defendant in an action for a declaratory judgment of patent invalidity by focusing more broadly on a defendant's activities related to the patent at issue.  340 F.3d at 1351 (holding contacts including a visit to forum state to demonstrate, and  various communications concerning, the technology that formed the subject matter of the patent at issue arose out of or were related to invalidity claim); *see also Inamed*, 249 F.3d at 1362 (holding patent misuse cause of action arose out of or related to prior negotiation and execution of license agreement); *Akro*, 45 F.3d at 1547

("[I]t is significant that the constitutional catch-phrase 'arise out of or relate to' is disjunctive in nature, indicating added flexibility and signaling a relaxation of the applicable standard." (quotations omitted)).

Here, Allan Block's patent infringement claims are based on ICCI's continued manufacture and sale of Allan Block blocks after termination of the production agreement. As discussed above, ICCI's contacts with Allan Block in Minnesota resulted from its negotiation of and obligations under the production agreement with Allan Block. The production agreement, among other things, provided ICCI with a license for Allan Block's patented technology. In connection with the production agreement, ICCI employees engaged in regular communication with Allan Block about, and traveled to Minnesota on numerous occasions to attend training sessions related to, Allan Block's patented technology. Thus, the Court concludes that both Allan Block's contract and patent claims "arise out of or relate to" ICCI's contacts.

Where personal jurisdiction has been shown to otherwise comport with due process, a defendant may defeat it on constitutional grounds if it can make a compelling case that jurisdiction would be unreasonable. *See Akro*, 45 F.3d at 1549; *see also Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996). "The test of unreasonableness is a multi-factored balancing test that weighs any burdens on the defendant against various countervailing considerations, including the plaintiff's interest in a convenient forum and the forum state's interest in resolving controversies flowing from in-state events." *Viam Corp.*, 84 F.3d at 429 (citing *Burger King*, 471 U.S. at 477). ICCI does not make any arguments suggesting that the exercise of jurisdiction would be unreasonable, but instead urges the Court to discuss "fairness considerations." The Court notes that while it may be more convenient for ICCI to litigate this case in Illinois, "progress in communication and transportation has made the

defense of a lawsuit in a foreign tribunal less burdensome." *Schwanger v. Munchkin, Inc.*, Civ. No. 99-1049, 1999 WL 820449, at *6 (Fed. Cir. Oct. 7, 1999) (quoting *World-Wide Volkswagen*, 44 U.S. at 294). In addition, Minnesota's "interest in discouraging injuries that occur within the state" is well established. *See DB Indus., Inc. v. B&O Mfg., Inc.*, Civ. No. 03-5277, 2004 WL 1765337, at *3 (D. Minn. August 4, 2004) (quoting *Beverly Hills*, 21 F.3d at 1568). Finally, as discussed above, ICCI has had significant contacts with Minnesota over the past eleven years. Accordingly, the Court concludes that it would not be unreasonable to assert personal jurisdiction over ICCI in this action.

Viewing the record in the light most favorable to Allan Block, the Court concludes that Allan Block has made a prima facie showing that ICCI's contacts with Allan Block in Minnesota support the exercise of specific jurisdiction over it. Accordingly, the Court denies ICCI's motion insofar as it asserts that the Court lacks personal jurisdiction over ICCI.

> 2.   *Improper venue*

ICCI argues that venue over the patent claims is improper because there is no evidence that it has committed an act of infringement in Minnesota and because there is no allegation that ICCI has a place of business in Minnesota.[6] With regard to a patent infringement claim, venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (2000). A corporate defendant "resides" wherever it is subject to personal jurisdiction at the time the action commenced. 28 U.S.C. § 1391(c) (2000); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578, 1584 (Fed. Cir. 1990) (holding that 28 U.S.C. § 1391(c) applies to the patent venue statute). Because the Court has already determined that

---

[6]   ICCI does not argue that venue for Allan Block's contract claim is improper.

ICCI is subject to personal jurisdiction in Minnesota, it "resides" in Minnesota for purposes of venue.  Accordingly, the Court denies ICCI's motion insofar as it argues venue is improper.

     *3.*     *Failure to state a claim*

     In ruling on a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, a court must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff.  *Midwestern Mach., Inc. v. Nw. Airlines, Inc.*, 167 F.3d 439, 441 (8th Cir. 1999); *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993).  The court will not dismiss the complaint unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir. 2002).  The court may consider the complaint, matters of public record, materials embraced by the complaint, and exhibits attached to the complaint.  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

     Allan Block alleges that ICCI was party to a production agreement with Allan Block, under which ICCI received a license to produce Allan Block blocks.  Allan Block further alleges that ICCI breached the agreement by failing to return certain technology and continuing to manufacture Allan Block blocks after Allan Block terminated the agreement.  In addition, Allan Block alleges that ICCI's unauthorized production of Allan Block blocks constitutes patent infringement.  Accepting Allan Block's factual allegations as true and construing them in the light most favorable to the Allan Block, it does not appear beyond doubt that Allan Block cannot prove any set of facts in support of its claim.  Therefore, dismissal is unwarranted and the Court denies ICCI's motion to dismiss for a failure to state a claim.

In the alternative, ICCI argues that it is entitled to summary judgment on Allan Block's patent and contract claims. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In support, ICCI relies on the declaration of its president, Lee W. Johnson. In particular, Johnson states that: ICCI sold all assets to County Materials on March 31, 2005; Allan Block was aware of and did not object to the asset sale; ICCI informed Allan Block that the asset sale included the molds to make Allan Block blocks; that Allan Block did not inform ICCI that it wanted to purchase the molds; and that ICCI has not made, sold or used any concrete blocks since the asset sale.

The Court concludes that ICCI's motion for summary judgment is premature. No discovery has taken place in this case. Therefore, Allan Block has not had an opportunity to explore the claims made by ICCI regarding the timing and circumstances of the sale of assets to

County Materials and ICCI's production of Allan Block blocks.  In addition, factual issues exist. In particular, through affidavit testimony, Allan Block denies that it agreed to allow ICCI to transfer molds and technology to County Materials, and claims that it requested that ICCI return the molds and technology.  Accordingly, ICCI's motion for summary judgment is denied.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.    County Materials' motion to dismiss, or in the alternative, to transfer or stay [Docket No. 13] is DENIED.

2.    ICCI's motion to dismiss [Docket No. 25] is DENIED.

3.    Allan Block's motion to file supplemental evidence [Docket No. 43] is GRANTED.

Dated:  May 12, 2006

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge