UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Allan Block Corporation,

       Plaintiff,

v.                                                       Civ. No. 05-2879 (JNE/JJG)
                                                       ORDER

County Materials Corp., and Champaign
Concrete Company, Inc.,

       Defendants.

---

Kurt J. Niederleucke, Esq., Darren B. Schwiebert, Esq., and James R. Mayer, Esq., Fredrikson & Byron, P.A., appeared for Plaintiff Allan Block Corporation.

Gary A. Ahrens, Esq., and John C. Scheller, Esq., Michael Best & Friedrich LLP, appeared for Defendant County Materials Corp.

Frank S. Farrell, Jr., Esq., F.S. Farrell LLC, appeared for Defendant Champaign Concrete Company, Inc.

---

Allan Block Corporation brought this action for breach of contract and patent infringement against County Materials Corp. (County) and Champaign Concrete Company, Inc. (Champaign). The case is before the Court on Allan Block's motion for a preliminary injunction and Allan Block's objections to the order of the Magistrate Judge denying in part Allan Block's motion for leave to amend its complaint. For the reasons set forth below, the Court denies Allan Block's motion for preliminary injunction and affirms the order of the Magistrate Judge.[1]

---

[1] Two motions filed by County are also before the Court: the first to exclude portions of declarations in support of Allan Block's motion for a preliminary injunction, and the second for an evidentiary hearing on Allan Block's motion for a preliminary injunction. Because the Court denies the motion for preliminary injunction, County's motions are denied as moot.

1

## I. BACKGROUND

Allan Block is a Minnesota corporation involved in the development and licensing of a cement block (Block) and related technology to be used in the construction of segmental retaining walls (SRW).[2] Allan Block owns United States Patent Nos. 5,484,236 and 4,909,010, titled "Method of Forming Concrete Retaining Wall Block" and "Concrete Block for Retaining Walls," respectively. The Blocks are used to create a retaining wall and secure together by way of a raised front, top lip, and bottom notch. Allan Block licenses the Block, corresponding molds used to create the Block (Molds), and related technology to regional manufacturers. Each regional manufacturer has the exclusive right to manufacture the Block in a particular area and to sell the Block in return for royalties.

County is a Wisconsin corporation that has been manufacturing concrete blocks for over 60 years. In April 1993, Allan Block and County's predecessor in interest, County Concrete Corporation (CCC), entered into a production agreement (CCC Agreement). The CCC Agreement granted CCC a license to use and possess the Molds for the limited purpose of manufacturing the Blocks within a defined territory spanning northern Wisconsin. CCC was also licensed to sell the Blocks both within and outside of that territory. In return, CCC agreed to pay Allan Block a royalty fee for each Block sold. Also under the agreement, CCC agreed to use Allan Block's "Technology, including but not limited to the Molds, only for the manufacture of the Block within the Territory and only for the sale of the Block under [Allan Block] Marks." The Agreement defines "Technology" as:

---

[2] SRW blocks are generally made by pouring concrete into a mold to form the block. SRW blocks were designed for the construction of landscape and retaining walls without the use of mortar, instead using interconnecting features to secure the wall.

> The Molds, the granted patent, the foregoing technology, and all other unpatented related know-how, trade secrets, processes, designs, technical data and inventions, whether patentable or not, owned or used by Licensor in connection with the Block.

CCC further agreed to promptly notify Allan Block of any improvement, betterment, or modification of the Block and/or the Technology of which CCC is aware; not to use any such improvement without Allan Block's prior written consent; and that Allan Block shall own the rights to any such improvement. In the event of a termination of the agreement, CCC agreed to (1) immediately cease use of the Technology, including the Molds; (2) return all Technology, including specifically the Molds; and (3) immediately cease manufacture of the Block. Finally, CCC agreed that for a period of eighteen months following termination of the agreement, CCC would not engage in the manufacture or sale of any other mortarless, stackable, concrete block retaining wall product other than the Wall Block and Versa-lok Block.

In October 1997, Quality Concrete Products, Inc. (Quality) entered into a similar production agreement (Quality Agreement) with Allan Block, which granted Quality a license to manufacture and sell the Blocks in a territory covering portions of southern Wisconsin. County purchased the assets of Quality in January 2004. Under terms of the Quality Agreement, however, neither the agreement nor any interest therein could be assigned by Quality without the prior written consent of Allan Block. Although aware of County's purchase, Allan Block never provided written consent for the assignment. Nevertheless, County and Allan Block operated under the terms of the Quality Agreement, with County manufacturing and selling Blocks in the Quality territory and paying royalties to Allan Block based on those sales.

Champaign is an Illinois corporation that formerly did business as Illinois Concrete Co., Inc. (ICCI). In March 2005, County purchased ICCI, which held a license with Allan Block for the exclusive manufacture of the Blocks in portions of Illinois under a 1994 production

3

agreement (ICCI Agreement).  On April 15, 2005, Allan Block notified County that the ICCI Agreement was not transferable to another company and that no license existed between County and Allan Block for the ICCI territories.  Still, Allan Block allowed County to continue operating under the ICCI license for the remainder of April 2005 and initiated discussions regarding a new production agreement for the ICCI territories.

On April 27, 2005, Allan Block notified County that the license for the ICCI territories was terminated.  At the same time, Allan Block notified County that it was terminating County's license to produce Allan Block products in Wisconsin.  Under the terms of the CCC and Quality Agreements, which provided that the agreements remained in effect for 120 days following written notice of termination, County's license to manufacture and sell Allan Block products in Wisconsin ended on August 25, 2005.

During the course of the agreements, Allan Block provided components of its technology, including Mold parts, designs, and specifications to County and its predecessors in interest.  In 2005, County began developing a new mortarless stackable concrete retaining wall product that became known as the Victory block.  County admits that it used Allan Block drawings and mold parts as source materials in the design and creation of the Victory block.  County asserts, however, that any Allan Block source materials used in the development of the Victory block were obtained either from the former Quality production facility in Sussex, Wisconsin, or from the former ICCI production facility in Champaign, Illinois.

On November 16, 2005, County commenced a declaratory judgment action against Allan Block in the United States District Court for the Western District of Wisconsin (Wisconsin Action).  County sought a declaration that the covenant not to compete contained in the CCC Agreement was unenforceable.  Allan Block commenced the instant action on December 12,

4

2005, asserting breach of contract and patent infringement against County and Champaign. By April 14, 2006, Allan Block learned that County was manufacturing the Victory block. County has sold the Victory block at least twice since April 1, 2006. Allan Block filed this motion for preliminary injunction on June 23, 2006.

## II.     DISCUSSION

### A.     Motion for preliminary injunction

Allan Block seeks a preliminary injunction preventing County from: (1) manufacturing or selling the Victory block; (2) using Allan Block's technology; (3) manufacturing or selling any modified Block or other product developed using Allan Block's technology; and (4) manufacturing or selling within Wisconsin or Illinois any SRW block other than the Wall Block and Versa-lok Block. The record here is sufficient to address whether County should be prohibited from using Allan Block's technology or from manufacturing and selling Victory blocks or any other products developed using Allan Block's technology. Because Allan Block's motion for preliminary injunction does not address the patent infringement claims, the Court will consider only Allan Block's contract claims as a basis for injunctive relief. Allan Block has not alleged a breach of the covenant not to compete in this action, therefore the Court will not consider Allan Block's arguments relating to the non-compete provision in deciding this motion for preliminary injunction.

Injunctive relief may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) the movant will suffer irreparable harm absent the restraining order; (3) the balance of harms favors the movant; and (4) the public interest favors the movant. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Injunctive relief is an extraordinary remedy, *see Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815

F.2d 500, 503 (8th Cir. 1987), and the party requesting the injunction bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987). While no one factor is determinative, likelihood of success on the merits is generally the touchstone inquiry. *Dataphase*, 640 F.2d at 113*; see also S & M Contractors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir. 1992).

### 1.  Likelihood of success on the merits

Allan Block argues that County breached the CCC and Quality Agreements by: (1) using Allan Block's Molds and Technology to develop and produce the Victory block; (2) modifying the Block to create the Victory block; and (3) selling the Victory block in County's former Allan Block production territory. At the core of Allan Block's contract claims is its argument that County breached paragraph 8.9 of the CCC Agreement, which states:

> Producer shall promptly notify Licensor of any improvement, betterment or modification of the Block and/or the Technology of which Producer is aware ("Producer's Improvement"). Producer may utilize Producer's Improvement only with the prior written consent of Licensor and at Producer's expense. Licensor shall own the rights to and Licensor may utilize Producer's Improvement without any payment to Producer. Licensor shall, in turn, promptly notify Producer of any improvements, betterment or modification of the Block and/or the Technology of which Licensor is aware ("Licensor Improvement"). Producer may utilize Licensor's improvement at Producer's expense.

Paragraph 11.7 of the Quality Agreement contains a similar provision:

> Producer shall produce all Blocks in strict accordance with Licensor's control standards and specifications. Any modification from Licensor's specifications must approved [sic] by Licensor prior to manufacture and sale. Licensor shall own all rights to any such modifications.

Also relevant to this claim are paragraphs 8.8 of the CCC Agreement and 11.6 of the Quality Agreement, which provide: "Producer will use the Technology, including but not limited to the Molds, only for the manufacture of the Block within the Territory and only for the sale of the Blocks under the Marks."

Allan Block has submitted extensive evidence that County's Victory block is a modification of the Block, and was designed and created through the improper use of Allan Block Technology, including designs and drawings, Mold parts, and other Mold technology. For example, County's production manager, Michael Zuehlke, testified that he began the development of the Victory block by:

> . . . selecting some mold parts that I found at the plant purchased by County Materials from Quality Concrete Production in Sussex, Wisconsin. I asked the firm A.K. Kraussel and Company of Milwaukee, Wisconsin to modify some of the parts and manufacture new parts to make it possible for me to assemble a mold to produce the new Victory block to be marketed by County Materials.

Additionally, there is evidence that County used drawings of Allan Block Mold designs to prepare modifications to the Mold. According to Zeuhlke, he:

> . . . also made reference to some drawings of the [Allan Block] mold parts made by Besser Company ("Besser"). The drawings which [Zeuhlke] used to prepare to order the modification of the mold parts from A.K. Kraussel and the molds from Rampfs are documents that [Zeuhlke] either received from County's plant in Champaign, Illinois (formerly known as Illinois Concrete) or were documents which [Zeuhlke] found at the Sussex plant after its acquisition by County from Quality Concrete Products, Inc.

Although County admits that it used Allan Block Mold parts and drawings in the development of the Victory block, County argues that these actions did not violate the terms of any agreement between County and Allan Block. In support of this position, County points to paragraph 19.1 of the Quality Agreement, which provides that "[n]either this Agreement nor any interest herein may be assigned, in whole or in part, by Producer without the prior written consent of Licensor." Because Allan Block never consented in writing to the assignment of the Quality Agreement, County contends that no contract governed the parties' relationship in the Quality territories. Furthermore, Allan Block never consented to the assignment of the ICCI

7

Agreement to County. County therefore contends that it did not obtain any of the source materials used to create the Victory block pursuant to any contract between Allan Block and County.

Allan Block contends that it provided oral consent to the assignment of the Quality Agreement. In response, County argues that any such oral agreement would be barred by the Minnesota Statute of Frauds. Minn. Stat. § 513.01 (2004). In some circumstances, the subsequent conduct of parties can protect an oral agreement from the statute of frauds. *See Fischer v. Pinske*, 243 N.W.2d 733, 735 (Minn. 1976) (holding that because the parties had honored the terms of an employment contract for several years past its termination, they had waived the requirement that the renewal be in writing); *Kent v. Costin*, 153 N.W. 874, 875 (Minn. 1915) (holding that even though a verbal agreement to form a corporation and issue stock was invalid as originally entered, subsequent performance rendered the statute of frauds inapplicable); *House v. Baxter*, 371 N.W.2d 26, 29-30 (Minn. Ct. App. 1985) (holding that the statute of frauds is not a bar to the extension of a written contract if the parties, by their conduct, have impliedly extended that contract). It is undisputed that County took over Quality's territory as an Allan Block producer and continued to manufacture, sell, and pay royalties to Allan Block based on those sales. Furthermore, the Minnesota Supreme Court has held that a contractual clause providing that a purchaser of property shall not sell, assign, or transfer the contract or property without the written consent of the seller is designed for the benefit of the seller and can be waived by subsequent conduct. *Karalis v. Agnew*, 127 N.W. 440, 441 (Minn. 1910). Given that the parties in continued to operate pursuant to the terms of the Quality Agreement after County's purchase of Quality's assets, the Court concludes that County is bound by the terms of the Quality Agreement.

In addition, paragraph 6.1 of the CCC Agreement indicates that County could be bound by the contractual limitations placed on its use of the Molds regardless of where those Molds were obtained. Paragraph 6.1 states that the "Producer shall obtain the Molds needed to handle the production requirements of the Territory for and under the direction of the Licensor at no cost to the Licensor." The agreement remains silent, however, as to the manner in which County is to secure the Molds. Therefore, whether the Molds that County used to create the Victory block were found in the former Quality production facility in Sussex, Wisconsin, or the former ICCI plant in Champaign, Illinois, is of little importance. Once the Molds were in County's possession, County was bound by the limitations placed on the use of the Molds in the CCC Agreement.

Paragraphs 8.8 of the CCC Agreement and 11.6 of the Quality Agreement expressly prohibit County from using any of the Technology, including the Molds, for any purpose other than for the manufacture and sale of the Block under Allan Block's marks. Paragraph 8.9 of the CCC Agreement and paragraph 11.7 of the Quality Agreement require County to notify Allan Block of any modifications to the Blocks and state that Allan Block shall own the rights to any such modifications. Because the evidence at this early stage of the litigation supports a finding that County used Allan Block drawings and Mold parts to design and create the Victory block and failed to inform Allan Block of the modification, the Court concludes that Allan Block is likely to succeed in demonstrating that County breached the agreements.

### 2.   **Irreparable harm**

Having concluded that Allan Block has met its burden of establishing a likelihood of success on the merits, the Court turns to the question of irreparable harm. "[T]o warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable

9

harm." *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999) (citation omitted). A preliminary injunction should not be granted when any harm which the moving party will experience between the time of the preliminary injunction and the trial can be adequately compensated by money damages and a permanent injunction. *Id.*

Allan Block asserts that County's breaches of the CCC and Quality Agreements are causing irreparable harm in the form of potential customer confusion and damage to goodwill. According to Allan Block, this harm stems from customer confusion between its superior Allan Block products and County's inferior Victory block. County, on the other hand, argues that Allan Block's claim of customer confusion is based on mischaracterized and disputed facts.

Allan Block relies primarily on *Reebok International Ltd. v. Baker*, 32 F.3d 1552 (Fed. Cir. 1994) to support its claim of irreparable harm by means of consumer confusion. Under *Reebok*, "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Id.* at 1558. County argues that *Reebok* does not apply because Allan Block does not seek an injunction based on alleged patent infringement. This distinction is significant because the irreparable harm showing in the patent context is based on the premise that the patentee's right to exclude infringing products suggests that money damages will not suffice. *Id.* at 1557. In other words, when a patentee demonstrates the likelihood of success of a patent infringement, it is entitled to a presumption of irreparable harm in the preliminary injunction analysis. *See id.* Rather than applying the *Reebok* standard, County suggests that Allan Block's claim is best seen as a claim for trade dress infringement.

Because Allan Block is not seeking an injunction based on a patent infringement or trade

10

dress infringement, the Court will not apply the legal standard for determining customer confusion under either. As such, the Court notes that Allan Block retains the "complete burden" of establishing the element of irreparable harm. *Gelco Corp.*, 811 F.2d at 418. Both Allan Block and County concede that a multitude of factors should be considered when analyzing customer confusion in the context of irreparable harm. Accordingly, the Court will examine those factors cited by Allan Block in support of its claim of irreparable harm through customer confusion. Allan Block contends that: (1) County is targeting its existing Allan Block customers; (2) County is failing to independently market the Victory block; (3) the Victory block is similar to Allan Block Blocks; and (4) the Victory block is inferior to Allan Block Blocks.

Allan Block argues that County is creating customer confusion by targeting its existing Allan Block customers. County argues, however, that it is not limiting its marketing to its existing Allan Block customers. Instead, County claims to be targeting its entire customer base. Because County markets and sells more than 1,300 types of blocks, County's target market includes potential customers who are not Allan Block customers. Nevertheless, the fact that County is now marketing the Victory block to customers who purchased Allan Block Blocks under Allan Block trademarks from County over a twelve-year period presents a scenario in which the potential for customer confusion is ripe. This potential could be exploited if County continued to use Allan Block promotional materials or displayed the Allan Block trademark while marketing the Victory block. County claims, however, that it has discontinued the use of any Allan Block trademark, service mark, or literature. The only such evidence presented to the contrary by Allan Block was a reference on the ICCI website to Allan Block that was removed by County after its disclosure in Allan Block's reply memorandum to this motion.

Allan Block next argues that the potential for customer confusion exists because County

is not using its own materials to market the Victory block. Instead, Allan Block argues that County is relying on twelve years of marketing Allan Blocks under Allan Block trademarks. In response, County claims to have constructed a marketing program that protects against customer confusion. County contends that its sales representatives market the Victory block directly to contractors. Furthermore, County claims that Victory blocks are not available in traditional retail stores but are sold to sophisticated customers as components of complex projects requiring design and engineering expertise. Finally, County's Sales Manager of Landscape Operations, Dale Laurin, testified that County is marketing the Victory block as a County product, and not marketing any Allan Block product. Allan Block has not presented sufficient evidence to refute County's claims regarding its marketing of the Victory block.

Allan Block's next argument is that the Victory block is confusingly similar in appearance and function to Allan Block Blocks. In response, County argues that mere similarities in the appearance of two products are insufficient to show a likelihood of customer confusion in the absence of evidence of market confusion. The issue, according to County, is whether actual end user customers are confused.

In an effort to establish evidence of actual customer confusion, Allan Block submitted the declaration of Ross Johnson, a customer of Allan Block products sold through County. In 1994 and 2000, Mr. Johnson built landscape retaining walls at his home with Allan Block AB Stones Tan purchased from County. In June 2006, Mr. Johnson contacted County in an effort to purchase more AB Stones Tan. After searching all of its locations and dealers, the County representative indicated that there were no more AB Stones Tan available. Instead, the County representative offered to sell Mr. Johnson Victory blocks, which was said to be as close to the AB Stones Tan as any product County had available. Mr. Johnson ordered the Victory blocks

and built an extension to one of his retaining walls made from the AB Stones Tan. During the construction of the wall, Mr. Johnson noted that the Victory blocks were not as thick as the AB Stones Tan nor an identical color match. Furthermore, Mr. Johnson found the Victory blocks to be very brittle and prone to fractures. Mr. Johnson expressed concern regarding the continuing integrity of the wall built with Victory blocks and testified that he would not purchase the Victory block again.

Rather than supporting Allan Block's claim of irreparable harm by establishing the existence of customer confusion, Mr. Johnson's declaration indicates a lack of customer confusion. Although supporting Allan Block's contention that the products look and function similarly, Mr. Johnson's declaration reveals that he has no difficulties distinguishing the Victory block from Allan Block products. The County representative who sold the Victory blocks first attempted to secure Allan Block products for Mr. Johnson. Failing to do so, the County representative offered to sell a separate product called the Victory block. After receiving the Victory blocks, Mr. Johnson noticed several differences between the Allan Block Blocks and the Victory blocks, including thickness, color, and fragility. Mr. Johnson's ultimate conclusion that he would not purchase any more Victory blocks fails to support the claim that Allan Block was irreparably harmed by County's sale of the Victory block.

Having considered the evidence offered by Allan Block in support of its claim of customer confusion resulting in irreparable harm, the Court concludes that Allan Block has failed to meet its burden to establish a threat of customer confusion. Because Allan Block has not established a likelihood of customer confusion, it is not necessary to determine whether the Victory block is an inferior product to Allan Block Blocks. Even if the Victory block is an inferior product, the failure to establish a likelihood of customer confusion indicates that Allan

Block is not irreparably harmed by the deficiencies of the Victory block. Accordingly, the Court concludes that Allan Block has failed to demonstrate a sufficient threat of irreparable harm.

### 3. Balance of the harms and public interest

Having concluded that Allan Block has failed to establish a sufficient threat of irreparable harm, the Court need not address the remaining *Dataphase* factors. *See Gelco Corp.*, 811 F.2d at 418 ("The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction.") Accordingly, the Court denies Allan Block's motion for preliminary injunction.

### B. Allan Block's objections to the Magistrate Judge's order

On May 24, 2006, Allan Block filed a motion for leave to file an amended complaint in order to add a count for breach of contract against County relating to a non-compete provision. Following briefing and oral argument, United States Magistrate Judge Jeanne J. Graham denied in part Allan Block's motion on the basis of undue delay in bringing the motion and the unfair prejudice that would result if the amendment were permitted.

"The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential." *Reko v. Creative Promotions, Inc.*, 70 F.Supp.2d 1005, 1007 (D. Minn. 1999). The district court will reverse an order of a magistrate judge only if the order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a).

Allan Block filed its motion to amend the complaint more than six months after County signaled its intent to introduce a competing concrete block by filing a declaratory judgment action in the Western District of Wisconsin in November 2005. Allan Block asserts that the earliest it knew it had a ripe claim for breach of the non-compete provision was April 14, 2006,

when it learned that County began manufacturing the Victory block. As noted by the magistrate judge, however, Allan Block's filing occurred only after Allan Block received a favorable ruling in this Court on County's motion to dismiss, transfer or stay, in which Allan Block successfully argued that the non-compete provision was not part of this case. The magistrate judge found bad faith in bringing the motion to amend after succeeding in its argument that the non-compete provision was not part of the case.

The magistrate judge further found that granting the motion would result in unfair prejudice because of the danger of inconsistent rulings from two separate jurisdictions. At the time of the magistrate judge's order, County had expressed its intention of appealing a decision in the Wisconsin Action concerning the enforceability of the non-compete clause. Since the magistrate judge's order, Allan Block has initiated a separate claim involving the non-compete clause in the Western District of Wisconsin. Given the circumstances, the magistrate judge's conclusions that Allan Block's motion was untimely and that allowing the amended complaint would prove unfairly prejudicial are neither clearly erroneous nor contrary to law. Accordingly, the Court affirms the Magistrate Judge's order denying in part Allan Block's motion for leave to amend its complaint.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Allan Block's motion for a preliminary injunction [Docket No. 79] is DENIED.

2. County's motion to exclude portions of the Fosberg and Gravier declarations [Docket No. 96] is DENIED.

3. County's motion for an evidentiary hearing on Allan Block's motion for a preliminary injunction [Docket No. 100] is DENIED.

4. The Order of the Magistrate Judge [Docket No. 89] denying in part Allan Block's motion for leave to amend complaint [Docket No. 110] is AFFIRMED.

Dated: October 30, 2006

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge