UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Allan Block Corporation,

      Plaintiff,

v.                                                                    Civil No. 05-2879 (JNE/JJG)
                                                                      ORDER
County Materials Corp.,

      Defendant.

---

Darren Schwiebert, Esq., Fredrikson & Byron, P.A., appeared for Plaintiff Allan Block Corporation.

Felicia J. Boyd, Esq., and Shawn Gordon, Esq., Faegre & Benson LLP, and Gary A. Ahrens, Esq., Michael Best & Friedrich LLP, appeared for Defendant County Materials Corp.

---

This is an action by Allan Block Corporation against County Materials Corp. (County) for patent infringement, breach of contract, breach of the covenant of good faith and fair dealing, and tortious interference with contractual relations.  The patents-in-suit are U.S. Patent No. 4,909,010 ('010 Patent) and U.S. Patent No. 5,484,236 ('236 Patent).  County seeks a declaration that the patents are invalid.  The case is before the Court on County's motions for partial summary judgment, Allan Block's motion for partial summary judgment, and a Report and Recommendation dated October 17, 2008.  For the reasons set forth below, the Court concludes that County has not satisfied its burden of demonstrating that the asserted claims of the patents-in-suit are anticipated.  The Court concludes that the asserted claims of the '236 Patent are obvious.  The Court dismisses Allan Block's claims for patent infringement, breach of contract based on failure to return molds, breach of contract based on non-disparagement provisions, breach of the covenant of good faith and fair dealing, and tortious interference with contractual relations.

1

## I.     BACKGROUND

Allan Block develops and licenses concrete blocks and related technology for use in the construction of segmental retaining walls.  It owns the '010 Patent and the '236 Patent, entitled "Concrete Block for Retaining Walls" and "Method of Forming Concrete Retaining Wall Block," respectively.  The '010 Patent issued on March 20, 1990, from an application filed December 17, 1987.  The '236 Patent issued on January 16, 1996, from an application filed October 25, 1993.  Robert Gravier is the inventor of both patents-in-suit.

Allan Block licenses its blocks and technology to regional manufacturers that receive exclusive rights to manufacture blocks in a particular area and to sell the blocks in exchange for royalty payments.  In 1993, Allan Block and County's predecessor entered into an agreement for the production and sale of blocks.  County later assumed this agreement.  Allan Block entered into similar agreements with Illinois Concrete Company, Inc., and Quality Concrete Products, Inc. (Quality), in 1994 and 1997, respectively.  County later acquired the assets of Quality, and County and Allan Block continued to operate pursuant to the terms of Allan Block's agreement with Quality.  County also acquired Illinois Concrete, but Allan Block did not allow County to assume the agreement with Illinois Concrete.  In 2005, Allan Block terminated its agreements with County, Quality, and Illinois Concrete.  Allan Block refers to the County and Quality agreements as the "County Agreements"; the Court does the same in this Order.

Allan Block claims that County breached the County Agreements by failing to cease use of Allan Block's technology, to return the technology to Allan Block, and to cease manufacture of the licensed block upon the agreements' termination; by using Allan Block's technology to develop another block known as the Victory Block; by developing, manufacturing, and selling the Victory Block without Allan Block's permission; and by disparaging Allan Block's blocks.

Allan Block also asserts a claim against County for breach of the covenant of good faith and fair dealing based on County's alleged hindrance of Allan Block's purchase of molds from Illinois Concrete after the termination of Allan Block's agreement with Illinois Concrete.  In addition, Allan Block claims that County tortiously interfered with Allan Block's agreement with Illinois Concrete by inducing Illinois Concrete to sell molds and technology to County instead of returning them to Allan Block.  Finally, Allan Block claims that County infringed the '010 Patent and the '236 Patent by making and selling the Victory Block and by making and selling Allan Block's products without Allan Block's consent.

## II.    DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A.      **County's motions**

   *1.      Infringement*

In Counts Seven and Eight of its Amended Complaint, Allan Block claims that County infringed the '236 Patent and the '010 Patent, respectively.  County moves for summary judgment on Allan Block's infringement claims.  An infringement analysis has two steps.  First, the court determines the meaning and scope of the patent claims asserted to be infringed. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  Second, the court compares the properly construed claims to the device accused of infringing.  *Id.*  Claim construction is an issue of law, and infringement is a question of fact.  *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1356 (Fed. Cir. 2007), *cert. dismissed*, 129 S. Ct. 394 (2008).

   *a.      County's Victory Block*

*The '010 Patent*

Allan Block asserts that County's Victory Block[1] infringes claims 1, 2, 4, and 5 of the '010 Patent.  The parties' dispute turns on the phrase "said frontal surface defining a lower vertical portion normal to said bottom" which appears in claim 1.  Claim 1, the sole independent asserted claim, recites:

> A concrete block for use in construction of retaining walls and the like, said block including:
>
> a.  bottom, top, rear, side and frontal surfaces,
>
> b.  said bottom, rear and side surfaces being generally planar and arranged generally normal to one another;

---

[1]      County makes a Victory Standard Block and a Victory Corner Block.  The parties do not assert that the differences between the standard and corner blocks are material for present purposes.  For the sake of simplicity, the Court uses "Victory Block" in this Order.

c. said top including a first support area defined over a predetermined area of said top for the support of additional blocks, a vertically extending shoulder adjacent said frontal surface of said block and extending entirely therealong to provide a continuous block positioning member in close association to said frontal surface and a second top surface at the uppermost end of said extending shoulder;

d. *said frontal surface defining a lower vertical portion normal to said bottom* and an upper, rearwardly inclined portion extending from said vertical portion terminating at said second top surface;

e. said support area and said vertical shoulder providing a locating surface to receive an additional vertically positioned block thereon wherein the additional block is positioned rearwardly from the front surface of the receiving and supporting block whereby a wall of tiers of such blocks extend rearwardly and upwardly from a support surface.

(Emphasis added.)  In an Order dated April 26, 2007, the Court construed the phrase "said frontal surface defining a lower vertical portion normal to said bottom" to mean "the frontal surface has a lower vertical portion which is normal to (*i.e.*, abuts to form a right angle with) the bottom surface."

To facilitate explanation of the parties' arguments, a diagram of the Victory Block that the parties used in their briefs appears below.  According to County, area 24 is the front surface of the Victory Block, area 16 is the bottom, and areas 18 and 20 form a recess.  Because the front and bottom surfaces of the Victory Block do not meet to form a right angle, County contends that the Victory Block does not infringe the '010 Patent.

Allan Block responds that areas 16, 18, and 20 are the Victory Block's bottom surface, that area 24 is the lower vertical portion of the front surface, and that the front portion of the bottom surface, area 20, abuts to form a right angle with the lower vertical portion of the front



**THE VICTORY BLOCK**

surface.[2]  In support, Allan Block relies on the expert report of Alain Dorais.  Dorais states that

the Victory Block's bottom surface "is the part . . . that faces generally downwardly when in

use," that "the bottom surface . . . is actually made up of multiple surfaces," that "the bottom

surface . . . is generally planar," and that the lower vertical portion of the frontal surface abuts

and forms a right angle with area 20.  The Court is not persuaded.

Dorais acknowledges that "generally planar" means "generally flat."  He gives three

reasons why the bottom surface of a retaining wall block such as the Victory Block is generally

flat:  (1) "it is important for the bottom row blocks in a wall to lie flat on the ground"; (2) "a

block with a generally flat bottom surface can be offset at any position relative to the

corresponding lower blocks"; and (3) "because the top surface of this type of retaining wall

---

[2]     The '236 Patent's description of the block disclosed in the '010 Patent flatly contradicts
Allan Block's argument here:

> U.S. Pat. No. 4,909,010 which is assigned to the assignee of the present
> invention [Allan Block] discloses a novel block having a textured front surface,
> and which is ideal for constructing retaining wall systems with a setback.  The
> blocks interlock to create a strong barrier wall.  The setback is determined by the
> thickness of the front lip.  The blocks are formed in pairs by splitting a single
> molded block.  *There is no lower channel defined in the molded block*, thus, a
> wall cannot be built with no setback.

'236 Pat., col. 1, ll. 44-52 (emphasis added).

block is generally flat, the bottom surface should also be flat."  According to Dorais, the multiple

surfaces of areas 16, 18, and 20 satisfy this understanding of "generally planar" because (1) "in a

wall made of Victory Standard Blocks, the bottom row of Victory Standard Blocks lies flat on

the ground"; (2) "the bottom surface (16, 18, 20) of the Victory Standard Block allows the

Victory Standard Block to be offset in any desirable fashion, while still maintaining proper

weight distribution"; and (3) "when a Victory Standard Block rests on two lower Victory

Standard Blocks in a retaining wall, the bottom surface (16, 18, 20) of the upper block interfaces

with the first support area (8) of the lower blocks."  He continues, "There are no projections

extending downwardly from the bottom surface (16, 18, 20), so walls made of Victory Standard

Blocks would have no obvious instability problems (at least due to this aspect of the bottom

surface (16, 18, 20))."  Dorais ignores that area 18 extends downwardly from area 20 to area 16

and that his reasoning explains only why the actual bottom of the Victory Block, area 16, is

generally planar.

Although "generally" is a word of approximation, *Anchor Wall Systems, Inc. v.

Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1310-11 (Fed. Cir. 2003), areas 16, 18, and 20

do not form a generally planar surface.  *Cf. Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed.

Cir. 2005) (en banc) (stating that "conclusory, unsupported assertions by experts as to the

definition of a claim term are not useful to a court" and that expert testimony clearly at odds with

a claim construction mandated by the written record of a patent should be discounted).  They

occupy three distinct planes, areas 16 and 20 are in parallel planes separated by an inch, and area

18's plane sharply intersects those of areas 16 and 20.

The front surface of the Victory Block, area 24, abuts area 20, which is not the Victory

Block's bottom.  Area 24 does not abut area 16, the Victory Block's bottom, to form a right

angle.  Viewing the record in the light most favorable to Allan Block, the Court concludes that

Allan Block has not raised a genuine issue of material fact as to whether the Victory Block

infringes the '010 Patent.  *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263,

1278 (Fed. Cir. 2004) ("Dynacore's expert's opinions are precisely conclusory assertions,

reached using words in ways that contradict their plain meaning, that a critical claim limitation is

found in the accused device. The district court was correct in ruling that they did not create a

material factual dispute for trial.").  The Court therefore grants County summary judgment on

Allan Block's claim that the Victory Block infringes the '010 Patent.

*The '236 Patent*

Allan Block claims that the method of making the Victory Block infringes claims 1, 2, 7,

11, 12, 14, 15, and 16 of the '236 Patent.  The independent claims are claims 1 and 16.  The

parties' dispute here turns on the phrase "wherein the height of said lip is substantially equal to

the depth of said recess," which appears in claims 1 and 16.  Claim 1 illustrates the claim

limitation at issue:

> A method of creating a construction block adapted to form retaining walls
> or the like, comprising the steps of:
>
> (a)  forming a member having a major upper surface and major lower
> surface and a plurality of edges, said upper major surface having a ridge
> extending laterally across a midsection thereof between an opposed pair of
> said edges with said ridges extending upwardly and away from said upper
> major surface by a predetermined first dimension, said lower major
> surface having a notch extending laterally across a midsection thereof
> between said opposed pair of edges with said notch extending upwardly
> from said lower major surface by a dimension substantially equal to said
> predetermined first dimension, wherein said laterally extending ridge is
> parallel to and disposed vertically above said laterally extending notch;
> and
>
> (b)  splitting said member along a center of both said ridge and said notch
> to define a pair of said construction blocks, wherein each said construction
> block has rough textured front surface defined by splitting the member in
> half, a recess extending laterally thereunder, and a lip extending laterally

thereover *wherein the height of said lip is substantially equal to the depth of said recess.*

(Emphasis added.)  In the April 26 Order, the Court noted that "substantially," a word of approximation, modifies "equal."  Discerning no evidence that would permit identification of the permissible deviation from equality, the Court declined to construe the phrase.

County moves for summary judgment on the ground that the height of the Victory Block's lip, "H" in the diagram above, is not substantially equal to the depth of the block's recess, "D" in the diagram above.  Allan Block contends that a genuine issue of material fact exists as to whether the lip height and the recess depth are substantially equal.  The parties do not dispute that the lip height is ¾ inch and the recess depth is one inch.  County emphasizes the magnitude of the deviation by noting that the lip height is 25% smaller than the recess depth and that the recess depth is 33% larger than the lip height.  The difference is still ¼ inch.

As noted in the claim construction, the '236 Patent's specification describes the relationship between, and the function of, the lip and the recess.  Briefly, the lip and recess inhibit shifting of blocks after assembly into a wall.  There is evidence in the record that the Victory Block's lip and recess serve this purpose.  Whether the ¼ inch difference in the Victory Block's lip height and recess depth reveals that they are not "substantially equal" is an issue to be resolved by the finder of fact.  *See Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1368-70 (Fed. Cir. 2008) ("This functional approach is necessary and appropriate, because the deliberate imprecision inherent in the word 'about' makes it impossible to 'capture the essence' of the claimed invention in strict numeric terms."); *PPG Indus. v. Guardian Indus., Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("[A]fter the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the

accused product is for the finder of fact."). Viewing the record in the light most favorable to

Allan Block, the Court concludes that a reasonable finder of fact could conclude that the Victory

Block's lip height and recess depth are substantially equal. The Court therefore declines to grant

County summary judgment on Allan Block's claim that the method of making the Victory Block

infringes the '236 Patent.

                    b.      *Allan Block's products*

In its Amended Complaint, Allan Block alleges that County infringes the '236 Patent and

the '010 Patent by making, using, offering for sale, or selling concrete blocks sold under the

trademark "Allan Block" without Allan Block's consent. In response to County's initial motion

for partial summary judgment, Allan Block noted that County had not moved for summary

judgment on Allan Block's claims for patent infringement based on County's unauthorized sales

of Allan Block's products. Asserting that Allan Block had not pursued these claims during

discovery, County filed another motion for partial summary judgment.

County argues that summary judgment is appropriate because Allan Block failed to

disclose infringement claims based on unauthorized sales of Allan Block's products in its patent

infringement contentions. The Pretrial Scheduling Order required Allan Block to prepare a claim

chart that identified:

> (1) which claim(s) of its patent(s) it alleges are being infringed; (2) which specific
> products or methods of defendant[] it alleges literally infringe each claim; and (3)
> where each element of each claim listed in (1) is found in each product or method
> listed in (2), including the basis for each contention that the element is present.

In its patent infringement contentions, dated July 11, 2006, Allan Block contends that the

Victory Block infringes the patents-in-suit. Allan Block did not assert that County infringed by

making unauthorized sales of Allan Block's products. Asked in an interrogatory to identify each

County product that allegedly infringes the patents-in-suit, Allan Block incorporated its patent

infringement contentions.  Allan Block amended its interrogatory response based on the Court's

construction of certain claims, but still did not assert that County infringed by making

unauthorized sales of Allan Block's products.  Having failed to include its assertion that County

infringed the patents-in-suit in its patent infringement contentions and interrogatory answers,

Allan Block cannot pursue the claims.  *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,

467 F.3d 1355, 1369 (Fed. Cir. 2006); *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278,

1292 (Fed. Cir. 2005).

Even if Allan Block had included in its patent infringement contentions its assertion that

County infringed the patents-in-suit by making unauthorized sales of Allan Block's products,

Allan Block does not direct the Court to evidence that raises a genuine issue of material fact as to

whether the patents-in-suit read on Allan Block's products.  Allan Block maintains that the

patents-in-suit cover nineteen of Allan Block's products, but Allan Block has not submitted any

evidence that demonstrates that the patents-in-suit read on its products.  Allan Block nevertheless

asserts that County's Victory Block "is for all relevant purposes identical to the Allan Block"

such that "if the Victory Block infringes, the Allan Block must also infringe."[3]  Allan Block

maintains that its expert "specifically addressed the issue in his report, opining that the Allan

Block is covered by the patents-in-suit."  The Court is not persuaded.  Allan Block cannot

establish infringement by comparing its block to the Victory Block.  *See Johnson & Johnston*

*Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) ("[T]he law of infringement

compares the accused product with the claims as construed by the court.  Infringement, either

literally or under the doctrine of equivalents, does not arise by comparing the accused product

'with a preferred embodiment described in the specification, or with a commercialized

---

[3]      As discussed above, the Victory Block does not infringe the '010 Patent.

embodiment of the patentee.'" (quoting *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985)); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1481-82 (Fed. Cir. 1984) ("Infringement is not determined . . . by comparison between commercial products sold by the parties."). Moreover, the opinion relied on by Allan Block is conclusory with respect to the '236 Patent and does not address the '010 Patent. "[I]t is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact." *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000).

Relying on the doctrine of marking estoppel, Allan Block asserts that County cannot deny that the patents-in-suit cover Allan Block's products. The Federal Circuit has neither endorsed nor rejected marking estoppel. *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 113 F. App'x 930, 934 (Fed. Cir. 2004); *High Frequency Prods., Inc. v. Wynn's Climate Sys., Inc.*, 91 F.3d 167 (Fed. Cir. 1996) (unpublished table decision); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 890 (Fed. Cir. 1988) (concluding marking estoppel inapplicable, "[w]hatever the validity of the 'marking estoppel' line of cases"). Marking estoppel provides, under certain circumstances, that "a party that marks its product with a patent number is estopped from asserting that the product is not covered by the patent." *SmithKline*, 859 F.2d at 890 n.9. "[I]t has been held that placing a patent number on a product will estop a manufacturer from denying that his product embodies the patent for purposes of liability for both patent infringement damages and patent license royalties." *Boyd v. Schildkraut Giftware Corp.*, 936 F.2d 76, 79 (2d Cir. 1991) (citations omitted); *see SmithKline*, 859 F.2d at 890. For present purposes, the Court assumes, without deciding, that the doctrine is viable and applicable.

County contends that Allan Block has not offered any evidence to support its claim for damages.  In an interrogatory answer, Allan Block asserted that County's unauthorized manufacture and sales of Allan Block's products after March 30, 2005, in Champaign, Illinois, damaged Allan Block and that the damages included unpaid royalties at a minimum.  Allan Block stated that it would rely on its expert to calculate its damages.  The expert retained by Allan Block opined that Allan Block lost royalties in the amount of approximately $32,000 based on County's sales of the Victory Block.  The expert did not disclose any opinion as to the amount of damages Allan Block allegedly experienced due to County's unauthorized manufacture and sale of Allan Block's products.  County brought a motion to compel discovery directed in part toward Allan Block's damages.  The magistrate judge discerned that Allan Block's expert had opined only as to the amount of Allan Block's lost royalties due to County's sale of the Victory Block.  The magistrate judge ordered Allan Block to disclose other monetary damages:  "If Allan [Block] seeks other monetary damages, it must specify the types (including identifying under which legal claim or claims the alleged damages arise) and amounts of any such damages by July 1, 2008."  Allan Block's response to this Order did not disclose damages based on County's unauthorized manufacture and sales of Allan Block's products, and the Order itself belies Allan Block's contention that the Order "expressly excluded royalty damages for patent infringement as being subject to the motion."  On this record, Allan Block has not satisfied its burden to raise a genuine issue of material fact to support its claim for damages due to County's unauthorized manufacture and sale of Allan Block's products.  *See Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002).

Finally, Allan Block contends that County should be enjoined from further production of Allan Block's products.  County contends that Allan Block's claim is moot to the extent it seeks

injunctive relief because County ceased production of Allan Block's products years ago.  "The

fact that the defendant has stopped infringing is generally not a reason for denying an injunction

against future infringement unless the evidence is very persuasive that further infringement will

not take place."  *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281-82 (Fed. Cir.

1988).  Here, Allan Block does not dispute County's contention that it has neither manufactured

nor sold Allan Block's products for years.  It is undisputed that County returned Allan Block's

molds to Allan Block.  According to Allan Block, "[t]he molds are necessary to produce Allan

Block products."  Consequently, County is incapable of manufacturing additional Allan Block

products.  Insofar as Allan Block seeks to enjoin County from further production of Allan Block

products, Allan Block's claim is moot.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*

*(TOC), Inc.*, 528 U.S. 167, 189 (2000).  Moreover, Allan Block does not dispute County's

assertion that the '010 Patent expired, and a district court cannot enjoin infringement of an

expired patent.  *See Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001).

     2.     *Invalidity of the asserted claims of the '236 Patent*

County moves for summary judgment on its contention that the asserted claims of the

'236 Patent are invalid because they are obvious.  A patent is presumed valid.  35 U.S.C. § 282

(2000); *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1737 (2007).  Consequently, "the

evidentiary burden to show facts supporting a conclusion of invalidity, which rests on the

accused infringer, is one of clear and convincing evidence."  *Takeda Chem. Indus., Ltd. v.*

*Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007), *cert. denied*, 128 S. Ct. 1739

(2008); *see* 35 U.S.C. § 282.  A patent may not issue when "the differences between the subject

matter sought to be patented and the prior art are such that the subject matter as a whole would

have been obvious at the time the invention was made to a person having ordinary skill in the art

to which said subject matter pertains."  35 U.S.C. § 103(a) (2000); *see KSR*, 127 S. Ct. at 1734.

"The ultimate judgment of obviousness is a legal determination" based on underlying factual

determinations.  *KSR*, 127 S. Ct. at 1745-46.  To determine whether a patent claim is obvious, a

court considers (1) the scope and content of the prior art; (2) differences between the prior art

and the claims at issue; and (3) the level of ordinary skill in the art.  *Id.* at 1734; *Graham v. John*

*Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966).  Secondary considerations such as commercial

success, long felt but unresolved needs, or the failure of others may also be considered.  *KSR*,

127 S. Ct. at 1734; *Graham*, 383 U.S. at 17-18.

 The Supreme Court recently reiterated that a patent is not proved obvious simply by

pointing out its constituent elements in the prior art:

> [A] patent composed of several elements is not proved obvious merely by
> demonstrating that each of its elements was, independently, known in the prior
> art.  Although common sense directs one to look with care at a patent application
> that claims as innovation the combination of two known devices according to
> their established functions, it can be important to identify a reason that would
> have prompted a person of ordinary skill in the relevant field to combine the
> elements in the way the claimed new invention does.  This is so because
> inventions in most, if not all, instances rely upon building blocks long since
> uncovered, and claimed discoveries almost of necessity will be combinations of
> what, in some sense, is already known.

*KSR*, 127 S. Ct. at 1741.  Reasons to combine elements need not come from published articles or

the explicit content of published patents:

> In many fields it may be that there is little discussion of obvious techniques or
> combinations, and it often may be the case that market demand, rather than
> scientific literature, will drive design trends.  Granting patent protection to
> advances that would occur in the ordinary course without real innovation retards
> progress and may, in the case of patents combining previously known elements,
> deprive prior inventions of their value or utility.

*Id.*

 "In determining whether the subject matter of a patent claim is obvious, neither the

particular motivation nor the avowed purpose of the patentee controls.  What matters is the

objective reach of the claim." *Id.* at 1741-42.  One way to prove a patent obvious is to

demonstrate that "there existed at the time of invention a known problem for which there was an

obvious solution encompassed by the patent's claims." *Id.* at 1742.  A patent claim can also be

proved obvious by showing that the combination of elements was obvious to try:

> When there is a design need or market pressure to solve a problem and there are a
> finite number of identified, predictable solutions, a person of ordinary skill has
> good reason to pursue the known options within his or her technical grasp.  If this
> leads to the anticipated success, it is likely the product not of innovation but of
> ordinary skill and common sense.  In that instance the fact that a combination was
> obvious to try might show that it was obvious under § 103.

*Id.*

        a.     *Level of ordinary skill in the art*

County's expert, Robert Drysdale, defines the person of ordinary skill in the art as "a

person having an understanding of block and retaining wall stability requirements, or their

equivalent, with five to ten years' experience in the design and manufacturing of precast concrete

structures such as block and retaining walls."[4]  Allan Block's expert, Alain Dorais, asserts that

the relevant art is "segmental retaining wall block design and manufacturing" and that "one of

skill" in that art is a person "having some combination of a technical or engineering college

degree and/or at least five years' experience in designing, developing, and/or manufacturing

segmental retaining wall blocks and/or corresponding molds."

County contends that Dorais' opinions are "irrelevant" because Dorais opines as to a

person of skill in the art instead of a person of ordinary skill in the art.  County claims that

Dorais repeatedly confirmed at his deposition that "one skilled in the art" is a level of skill higher

than "one of ordinary skill in the art."  In support, County cites one page of a "rough" transcript

of the deposition where Dorais, discussing a Russian patent, distinguishes "one of ordinary skill

---

[4]     Allan Block's cursory challenge to Drysdale's qualifications does not persuade the Court
that he is necessarily disqualified from offering an opinion in this case.

in the art" from "one of skill in the art."  In response, Allan Block cites testimony of Dorais

where he discusses his expert report and states that the person of ordinary skill in the art is not

different from the person of skill in the art.  The portion of Dorais' testimony on which Allan

Block relies suggests that he may have given different answers earlier in his deposition.  The

parties have not directed the Court to Dorais' earlier testimony, and the excerpts of Dorais'

testimony submitted apparently do not include his earlier answers.  Drawing all reasonable

inferences in Allan Block's favor, the Court assumes for present purposes that Dorais' definition

of one of skill in the art describes the level of ordinary skill in the art.

>   b.   *Scope and content of the prior art*

For present purposes, the Court credits Dorais' assertion that the relevant art is

"segmental retaining wall block design and manufacturing."  The use of blocks to create

retaining walls—and thus methods of designing and manufacturing blocks—did not originate in

the '236 Patent.  Discussing the prior art, the '236 Patent acknowledges that "[r]etaining walls

are commonly employed to retain highly positioned soil, such as soil forming a hill, to provide a

usable level surface therebelow such as for playgrounds and yards, or to provide artificial

contouring of the landscape which is aesthetically pleasant."  '236 Patent, col. 1, ll. 15-19.

Similarly, the '010 Patent acknowledges the commercial availability of many "concrete blocks

for the construction of retaining walls and the like."  '010 Patent, col. 1, ll. 63-65.

The '236 Patent acknowledges that blocks known in the prior art were not limited to

cubes of concrete.[5]  For instance, the '236 Patent cites the '010 Patent as disclosing a block that

has a front lip whose thickness determines the setback of a retaining wall; U.S. Patent No.

5,017,049 as teaching a composite masonry block that contains grooves in the upper and lower

---

[5]    Or, as the sides are not of equal length, parallelepipeds of concrete.

major surfaces, and opposing flanges; U.S. Patent No. 5,031,376 as teaching blocks that are

formed in pairs, that contain grooves to facilitate splitting, and that include flanges; and U.S.

Patent No. 5,214,898 as teaching "a block for building retaining walls having a lip and groove

arrangement such that the block can be stacked to form a retaining wall with no setback at all."

'236 Patent, col. 1, l. 44 to col. 2, l. 37.

The use of lips and grooves in blocks stacked vertically did not originate in U.S. Patent

No. 5,214,898. For instance, U.S. Patent No. 1,544,478, which issued in 1925, almost seventy

years before U.S. Patent No. 5,214,898, disclosed a reinforced building block whose face was

offset horizontally and vertically. Although the block disclosed in U.S. Patent No. 1,544,478 is a

masonry block, one of ordinary skill in the art would readily recognize the potential applicability

of lips and recesses in retaining wall blocks. *See KSR*, 127 S. Ct. at 1742.

The ability to create blocks that contained vertical passages was also known in the prior

art. For instance, referring to Figure 3, which appears below, the '010 Patent disclosed vertical

"weight reduction passages" in blocks:

> [L]ightening or weight reduction passages **21***a*-**21***b* are provided vertically
> through the block **10** and a pair of apertures or passages **22***a*-**22***b* communicate
> with such passages **21***a*-**21***b* through surface **20***a* to define a passage from the
> weight reducing areas **21***a*-**21***b* through the rear-most surface **16** of the block. The
> block **10** then provides a primary support base **15** which is positioned on the
> ground or other foundation surface with the next vertically oriented tier of blocks
> being arranged in the interlocking area formed by the surfaces of the top **20***a*, **20***b*,
> and **20***c*. In this particular arrangement, it should be obvious that weight reducing
> passages **21***a*-**21***b* of several vertically oriented blocks will be in general
> alignment for either filling of the same with dirt or other materials or for the
> insertion of vertical tie elements such as re-bars or the like. These apertures **21***a*-
> **21***b* then perform a dual function in initial weight reduction of the block for ease
> of handling thereof and ultimate filling thereof or tying of vertically oriented
> blocks to one another.

'010 Patent, col. 3, l. 63 to col. 4, l. 15.



**THE '010 PATENT, FIGURE 3**

The '236 Patent also recognizes that "[i]t is known in the prior art to form blocks in pairs, whereupon a composite block is split to form a pair of substantially identical blocks to economize the production of the blocks" and that "splitting a composite block allows the formation of an irregular and aesthetically pleasant textured front surface for each of the blocks defined." '236 Patent, col. 1, ll. 33-36. For example, the '010 Patent discloses a method of making a pair of concrete blocks for use in retaining walls by splitting a composite block along a splitting channel. To facilitate an understanding of the method disclosed in the '010 Patent, Figure 4 from the '010 Patent appears below. The method disclosed is:

> Applicant's method of molding the individual blocks **10** results in a new method of manufacture to obtain a particular decorative surface on the vertical section **17***b* of the frontal area **17** of the block **10**. Two blocks are molded as a single unit with the surfaces **17***b* being formed after molding. Obviously in a molded two part unit the tapered surfaces **17***a* of two facing blocks provides a "splitting" channel. Simply cracking the blocks along the meeting surfaces of the tapered portion **17***a* results in the blocks splitting to form surface **17***b*. The result of such splitting will provide an open aggregate surface and thus a decorative surface for each of the molded blocks. It is felt that this method for providing the frontal decorative surface is unique in the art as most exposed aggregate surfaces are obtained either through sandblasting or exposed aggregate molding techniques.



**THE '010 PATENT, FIGURE 4**

'010 Patent, col. 4, l. 60 to col. 5, l. 7.

> c.    *Differences between the prior art and the claims at issue*

The '236 Patent's examiner gave the following Statement of Reasons for Allowance:

> The prior art does not teach a method of forming a block wherein the major upper
> surface has a ridge extending laterally across a midsection thereof and a lower
> major surface has a notch extending laterally across a midsection thereof so that
> the block can be split along a center of both ridge and notch to define a pair of
> construction blocks.

*Claim 1*

Claim 1 of the '236 Patent differs from the method disclosed in the '010 Patent by adding

a notch in the lower major surface.  As claim 1 reveals, the ridge and notch become lips and

recesses, respectively, in a pair of retaining wall blocks upon the splitting of the member.  Blocks

produced by the method of claim 1 have recesses; the '010 Patent's blocks do not.  Claim 1 of

the '236 Patent combines a known method of producing retaining wall blocks, with known

molding techniques, to produce blocks with known features.

The parties dispute whether there was any reason to combine these elements, but the

Court discerns a readily apparent reason to combine them in the market's reaction to the '010

Patent's blocks.  In his expert report, Dorais wrote:  "In the early 1990s, even after Allan Block's

'010 Patent block came on the market, many were skeptical of front-lip blocks.  Many believed

that the '010 Patent block resulted in walls that were set back too much."  Similarly, Gravier, the

inventor of the '010 Patent and the '236 Patent, stated in a declaration dated December 3, 2007,

that the '010 Patent's block "met with commercial success," but that "methods of manufacturing

such block were not conducive to producing variable setback blocks."  So there was a known

problem:  the '010 Patent yielded blocks whose setback was too great.

One of ordinary skill in the art would readily recognize at least two known solutions to

this problem.  First, a person of ordinary skill in the art would know that the thickness of the

front lip in the '010 Patent's block could be reduced to produce blocks of lesser setback.  Limits

to this solution are, however, readily apparent.  Reduction of the thickness of the front lip yields

a weaker front lip, and a weaker front lip ultimately compromises the stability of the retaining

wall.  Second, a person of ordinary skill in the art would know that a recess instead of a front

surface that is normal to the bottom surface would reduce the setback of the '010 Patent's blocks.

As noted above, it was known in the prior art that a lip and recess permitted formation of a wall

without any setback.  Given a front lip of a fixed width, simple geometry reveals that the setback

of the '010 Patent's block may be reduced by a recess of a lesser width or eliminated by a recess

of equal width.

Having identified a recess as the solution to the problem of too much setback in the '010

Patent's blocks, a person of ordinary skill in the art would turn to how to make the blocks with

recesses.  One might take the blocks produced by the method disclosed in the '010 Patent and

chisel a recess, but this process is likely slow and inefficient.  Possessing years of education and

experience, the person of ordinary skill in the art would not be limited to such an unrefined

solution.  *See KSR*, 127 S. Ct. at 1742 ("A person of ordinary skill in the art is also a person of

ordinary creativity, not an automaton.").  The person of ordinary skill in the art knows that

individual blocks can be formed with lips and recesses.  The person also knows that pairs of

blocks can be formed from a composite block containing a ridge with tapered surfaces and that

the tapered surfaces form a splitting channel.  When split, the ridge becomes front lips of a pair

of blocks.  Since front lips of a pair of blocks can be formed by splitting a composite member

along a ridge, the person of ordinary skill in the art would recognize that recesses could also be

formed by forming a notch in the composite block beneath the ridge.  Again, the ability to mold

recesses in concrete was known in the prior art.  Adding the notch to the method disclosed in the

'010 Patent is an obvious solution to the known problem of too much setback in the '010

Patent's blocks.

The remaining arguments raised by Allan Block to avoid the implication of the analysis

above do not persuade the Court.  Allan Block asserts that Drysdale failed to explain how or why

a person of ordinary skill in the art would have combined the elements discussed in his report to

arrive at the invention of claim 1.[6]  Review of his report reveals, however, that his opinions are

based on the assertion that claim 1 is obvious in light of the common sense of one of ordinary

skill in the art.  *See id.* at 1742-43.  Although assertions that a patent is obvious in light of the

common sense of one of ordinary skill in the art do not suffice in every case, the combination of

front lips and recesses in a method of making retaining wall blocks is not so complex as to

---

[6]     Allan Block asked Drysdale whether he analyzed "why or how one of skill in the art"
would combine the references discussed in his report with respect to the validity of the '236
Patent, and he responded that he had not.  County contends that the question is irrelevant because
the inquiry into a patent's validity depends on a person of ordinary skill in the art.  Earlier in the
deposition, Allan Block asked Drysdale whether he used "one skilled in the art" to mean the
same thing as "one of ordinary skill in the art," and he responded that he was "willing to accept
that equality."  Viewing the record in the light most favorable to Allan Block, the Court reads the
testimony of Drysdale to mean that he did not analyze how or why a person of ordinary skill in
the art would make the combinations discussed in his report.

necessarily require expert testimony to explain it.  *See Advanced Tech. Materials, Inc. v. Praxair, Inc.*, 228 F. App'x 983, 985 (Fed. Cir. 2007) (noting that expert testimony will not be necessary in many patent cases and that a court may recognize and apply at summary judgment a teaching plainly disclosed in a prior art reference); *cf. Proveris Scientific Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008) (holding district court did not abuse its discretion in requiring expert testimony to establish invalidity where patent's subject matter was "sufficiently complex to fall beyond the grasp of an ordinary layperson").  The Court notes that the case on which Allan Block relies, *Innogenetics, N.V. v. Abbott Laboratories*, 512 F.3d 1363 (Fed. Cir. 2008), addresses technology pertaining to "diagnostic tools that not only detect but also classify hepatitis C virus (HCV) genotypes in a biological sample, which facilitates tailoring the treatment of patients with different genotypes." 512 F.3d at 1368.  The asserted patent claimed "a method of genotyping HCV based on distinct genetic sequences that can be found in the 5 prime untranslated region (5′ UTR) of the HCV genome." *Id.*  The claimed method taught "specifically hybridizing probes, or short strands of nucleic acids, to a target sequence in the 5′ UTR via complementary base pairing principles, and then detecting the formation of any complexes formed between the probes and the nucleic acids of the 5′ UTR." *Id.*  The technology at issue in *Innogenetics* was undoubtedly of sufficient complexity to fall beyond the grasp of an ordinary layperson.  *Id.* at 1373.  This case involves concrete blocks and methods of creating them.

Next, Allan Block relies on Dorais' assertion that "it would not have occurred to [him] as of 1993 to produce the block disclosed in either the '010 Patent or [U.S. Patent No. 1,544,478] by first forming a two-block member with a notch like that of the '236 Patent's claim 1."  In *KSR*, an expert stated that the asserted claim "was a simple, elegant, and novel combination of

features." 127 S. Ct. at 1739 (internal quotation marks omitted).  Another expert opined that the claim was nonobvious because its placement of a sensor differed from that disclosed in a prior patent.  *Id.*  The Supreme Court concluded that the experts' assertions did not preclude the district court from granting summary judgment on the issue of obviousness.  *Id.* at 1745-46.  The same conclusion applies here.

Finally, Allan Block asserts that secondary considerations reveal that claim 1 is not obvious.  Allan Block asserts generally that the '236 Patent has enjoyed commercial success. "Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006); *see J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997).  Here, Allan Block relies on a declaration submitted by Gravier to support its assertion of commercial success.  Gravier states that blocks produced according to '236 Patent have met with tremendous commercial success, that virtually all of Allan Block's segmental retaining wall blocks are now manufactured using methods claimed in the '236 Patent, that licensed producers sell more than 15 million square feet of block per year under the '236 Patent, and that this commercial success is attributable in substantial part to the patented method of manufacture.  Gravier's declaration is, at most, weak evidence of commercial success.  *Tec Air, Inc. v. Denso Mfg. Mich. Inc.*, 192 F.3d 1353, 1360-61 (Fed. Cir. 1999); *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996).

Allan Block also states that the '236 Patent satisfied a long felt need.  According to Gravier, "[t]he ability to vary wall set-backs from no setback to a specified, desired setback utilizing substantial[ly] the same manufacturing equipment and molds has been a long-felt need in the segmental retaining wall industry."  To his knowledge, no one was using "a method to

create a front lip and notch locking mechanism on segmental retaining wall blocks" before the '236 Patent.  To the extent that Gravier suggests that the invention claimed in the '236 Patent was the first to create lips and recesses in segmental retaining wall blocks, the '236 Patent itself belies the suggestion.  As noted above, in its "Discussion of the Prior Art," the '236 Patent cites U.S. Patent No. 5,214,898 as "teach[ing] a block for building retaining walls having a lip and groove arrangement such that the block can be stacked to form a retaining wall with no setback at all."  '236 Patent, col. 2, ll. 29-32.  "Admissions in the specification regarding the prior art are binding on the patentee for purposes of a later inquiry into obviousness."  *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1362 (Fed. Cir. 2007), *cert. denied*, 128 S. Ct. 1655 (2008); *see Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1570 (Fed. Cir. 1988) ("A statement in a patent that something is in the prior art is binding on the applicant and patentee for determinations of anticipation and obviousness."); *In re Nomiya*, 509 F.2d 566, 571 & n.5 (C.C.P.A. 1975) ("[A] statement by an applicant, whether in the application or in other papers submitted during prosecution, that certain matter is 'prior art' to him, is an admission that that matter is prior art for all purposes . . . .").  Gravier's otherwise conclusory assertion that the '236 Patent satisfied a long-felt but unresolved need is insufficient to raise a genuine issue of material fact.  *See In re Kahn*, 441 F.3d 977, 990-91 (Fed. Cir. 2006).

Finally, Allan Block contends that there is evidence of copying by others.  Viewing the record in the light most favorable to Allan Block, the Court concludes that there is evidence of copying by others.  Nevertheless, "a showing of copying is only equivocal evidence of non-obviousness in the absence of more compelling objective indicia of other secondary considerations."  *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1380 (Fed. Cir. 2000).  Here, the other secondary factors are weak at best.

In light of the level of ordinary skill in the art, the scope and content of the prior art, and the differences between the prior art and claim 1 of the '236 Patent, the Court concludes that claim 1 is obvious.  The secondary factors on which Allan Block relies are insufficient to alter this conclusion.  *See Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007).

*Claim 2*

Claim 2 of the '236 Patent recites:

> The method as specified in claim **1** further comprising the step of selectively defining the width of said laterally extending notch to correspond to a selected wall setback defined when said blocks are stacked with the lip of a lower said block disposed within and substantially filling the recess of a said block stacked thereupon.

County contends that claim 2 is obvious because "[v]arying dimensions of blocks to vary the amount of wall setback was known in the art."  Allan Block contends that County failed to establish that claim 2 is obvious for the same reasons discussed in connection with claim 1.

As noted above, it was known in the prior art that use of lips and recesses in segmental retaining wall blocks allowed for the construction of retaining walls without any setback.  '236 Patent, col. 2, ll. 29-32.  It was also known in the prior art that retaining walls made of blocks that had a front lip but no lower channel necessarily had a setback.  '236 Patent, col. 1, ll. 49-52. One of ordinary skill in the art would readily discern as a matter of simple geometry that the narrower the width of the recess (or lower channel) in a block, the greater the setback in the retaining wall, given a fixed front lip.  *See KSR*, 127 S. Ct. at 1740-42.  The Court concludes that claim 2 is obvious.

*Claim 7*

Claim 7 of the '236 Patent recites:

> The method as specified in claim **1** further comprising the step of forming at least one vertically extending core each side of said laterally extending ridge and said notch.

County contends that claim 7 is obvious because "[t]he use of cores in blocks has long been known." Allan Block contends that County has not demonstrated that claim 7 is obvious for the reasons discussed in connection with claim 1.

As noted above, the use of cores in segmental retaining wall blocks was known in the prior art. For instance, the '010 Patent disclosed the use of weight reduction passages in retaining wall blocks and a method of forming a pair of retaining wall blocks by splitting a member along a ridge. In the member disclosed in the '010 Patent, weight reduction passages would be on each side of the splitting channel. The addition of cores on each side of the ridge and notch requires nothing more than the common sense of one of ordinary skill in the art. The Court concludes that claim 7 of the '236 Patent is obvious.

*Claim 11*

Claim 11 of the '236 Patent recites:

> The method as specified in claim **1** further comprising the step of defining said laterally extending notch to have a trapezoidal cross section, and defining said laterally extending ridge to have a pair of tapered surfaces.

Claim 11 results in blocks whose lips and recesses are slanted, and County contends that such surfaces would have been an obvious design choice. Allan Block contends that claim 11 is not obvious for the reasons asserted in connection with claim 1. The method disclosed in the '010 Patent includes a ridge with tapered surfaces that form a splitting channel. Accordingly, the ability to taper the outer surfaces of the ridge was well within the knowledge of one of ordinary skill in the art. The use of tapered surfaces in the ridge and a notch having a trapezoidal cross

section is a predictable variation that is well within the grasp of one of ordinary skill in the art.

Claim 11 is obvious.

*Claim 12*

Claim 12 of the '236 Patent recites:

> The method as specified in claim **1** further comprising the step of defining said member to have a rectangular profile such that each said defined pair of construction blocks has a rectangular profile.

It was well known in the prior art that a pair of blocks could be produced by splitting a member

and that the blocks would have a rectangular profile.  *See* '236 Patent, col. 1, ll. 33-54; '010

Patent, Fig. 5.  The ability to define the member of claim 1 to have a rectangular profile so as to

produce blocks that have a rectangular profile was well within the grasp of one of ordinary skill

in the art.  Claim 12 is obvious.

*Claim 14*

Claim 14 of the '236 Patent recites:

> The method as specified in claim **1** further comprising the step for forming a retaining wall from said defined construction blocks.

To one of ordinary skill in the art, the formation of a retaining wall using retaining wall blocks

would be obvious.  Claim 14 is obvious.

*Claim 15*

Claim 15 of the '236 Patent recites:

> The method as specified in claim **14** wherein said retaining wall is formed to have a setback.

The formation of a retaining wall with a setback using retaining wall blocks was well known in

the prior art.  Claim 15 is obvious.

*Claim 16*

Claim 16 of the '236 Patent recites:

The method of creating a construction block adapted to form retaining walls or the like comprising the steps of:

(a)  preparing a mold box for receiving raw concrete with the mold box having opposed front and rear walls and opposed side walls and with the opposed lateral side walls having parallelly disposed horizontally aligned rectangular core bar receiving openings formed along the lower edges thereof;

(b) inserting an elongated rectangular core bar within said mold box extending between said parallelly disposed horizontally aligned openings for forming a notch;

(c) loading raw concrete within said mold box while forming cores within said raw concrete along a vertical axis normal to the axis of said core bar to form a member having a major upper surface and major lower surface and a plurality of edges, said major upper surface formed with a ridge; and

(d) splitting said member along a center of both said ridge and said notch to define a pair of said construction blocks, wherein each said construction block has rough textured front surface defined by splitting the member in half, a recess extending laterally thereunder, and a lip extending laterally thereover wherein the height of said lip is substantially equal to the depth of said recess.

County maintains that claim 16 is similar to claim 1 except that it specifies use of a mold box and a core bar.  According to County, these are minor additional requirements within the knowledge of one of ordinary skill in the art.  Consequently, County argues, claim 16 is obvious. In support, County cites Drysdale's report in which Drysdale states that "[t]he use of a rectangular mold box and rectangular core bar were both within the knowledge of one skilled in the art" and that "[t]he use of core bars to form apertures during the molding process would have been well within the knowledge and common sense of one skilled in the art."  Allan Block contends that claim 16 is not obvious for the reasons advanced in connection with claim 1.  For essentially the same reasons set forth above, the Court concludes that claim 16 is obvious.

In short, the asserted claims of the '236 Patent are invalid.  The Court therefore dismisses Allan Block's claim for infringement of the '236 Patent.  *See Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1323 (Fed. Cir. 2001).

3.      *Willful infringement*

County contends that it cannot be held liable for willful infringement.  At the motion hearing, the Court stated that consideration of this issue was premature.  Further review reveals that the issue is amenable to summary judgment.  *See* D. Minn. LR 16.2, 2005 advisory committee's note.

"[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc), *cert. denied*, 128 S. Ct. 1445 (2008).  If a patent is not infringed, then it cannot be willfully infringed.  *Strattec Sec. Corp. v. Gen. Auto. Specialty Co.*, 126 F.3d 1411, 1420 (Fed. Cir. 1997).  Having dismissed Allan Block's infringement claims, the Court concludes that County cannot be liable for willful infringement.

4.      *Disparagement*

In Count Four of its Amended Complaint, Allan Block claims that County breached the County Agreements by disparaging Allan Block's block in County's marketing of the Victory Block.  County argues that summary judgment is appropriate because the alleged disparagement took place months after the termination of the County Agreements.  Although a contractual provision may survive the underlying contract's expiration, *Burke v. Fine*, 608 N.W.2d 909, 912 (Minn. Ct. App. 2000),[7] no language in the County Agreements indicates that the non-

---

[7]      The agreements contain Minnesota choice-of-law clauses.

disparagement provisions survive termination of the agreements.  Consequently, County's introduction of the Victory Block to the market in 2006, several months after the termination of the County Agreements, did not breach the agreements' non-disparagement provisions.  *See id.*

> 5.    *Breach of contract*

In Count One of its Amended Complaint, Allan Block claims that County breached the County Agreements by failing to cease use of Allan Block's technology, to return Allan Block's technology and molds to Allan Block, and to cease manufacture of the licensed block upon the agreements' termination.  County moves for summary judgment on this claim insofar as the claim is based on Allan Block's lost use of the molds.

In a Report and Recommendation dated October 17, 2008, the Honorable Jeanne J. Graham, United States Magistrate Judge, recommended that County's motion to exclude damages related to molds be granted in part and that County be granted summary judgment on Allan Block's claims for damages based on lost use of molds.  Allan Block objected to the Report and Recommendation, and County responded.  Based on a de novo review of the record, the Court adopts the Report and Recommendation.  *See* D. Minn. LR 72.2(b).  The Court therefore dismisses Count One insofar as Allan Block claims that County breached the County Agreements by failing to return molds.

> 6.    *Covenant of good faith and fair dealing*

In Count Five of its Amended Complaint, Allan Block asserts a claim against County for breach of the covenant of good faith and fair dealing.  In an interrogatory answer, Allan Block explained the basis of its claim:

> County Materials had knowledge of the [Illinois Concrete] Production Agreement
> and its terms regarding non-assignability without Allan Block's permission, the
> ownership of the Molds and Technology by Allan Block, the limited use
> provisions relating to the Technology and the Molds, and the requirement that

> [Illinois Concrete] return Allan Block's Technology and Molds upon termination
> of the Production Agreement.  Notwithstanding that knowledge, County Materials
> purportedly purchased and took possession of the assets of [Illinois Concrete],
> including the Technology and Molds, refusing to return the Technology and
> Molds to Allan Block upon request, and using the Technology and Molds to
> develop and manufacture the Victory Block. . . .   Allan Block has been damaged
> by County Materials' breach of the covenant of good faith and fair dealing . . . .

County contends that summary judgment is appropriate because it was not a party to the
agreement between Allan Block and Illinois Concrete and did not assume that agreement.  At the
motion hearing, Allan Block asserted that this claim rests on its agreements with County.

In *In re Hennepin County 1986 Recycling Bond Litigation*, 540 N.W.2d 494 (Minn.
1995), the Minnesota Supreme Court summarized the law regarding the implied covenant of
good faith and fair dealing:

> Under Minnesota law, every contract includes an implied covenant of good faith
> and fair dealing requiring that one party not "unjustifiably hinder" the other
> party's performance of the contract.  Similarly, we have held that the party to a
> contract cannot take advantage of the failure of a condition precedent when the
> party itself has frustrated performance of that condition.
>
> In Minnesota, the implied covenant of good faith and fair dealing does not
> extend to actions beyond the scope of the underlying contract.

540 N.W.2d at 502-03 (citations omitted); *see Team Nursing Servs., Inc. v. Evangelical Lutheran
Good Samaritan Soc'y*, 433 F.3d 637, 641-42 (8th Cir. 2006).  Here, County was not a party to
the agreement between Allan Block and Illinois Concrete, and County did not assume that
agreement.  Thus, Allan Block cannot maintain a claim against County for breach of the implied
covenant of good faith and fair dealing in that agreement.  *See State ex rel. Hatch v. Cross
Country Bank, Inc.*, 703 N.W.2d 562, 569 (Minn. Ct. App. 2005) ("Under long-standing
contract-law principles, a nonparty to a contract generally will not be bound by that contract.").

Allan Block's characterization of its claim as one based on its agreements with County is
not persuasive in light of its interrogatory response quoted above.  *See N. States Power Co. v.*

*Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) ("[W]hile we recognize that the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment.").  In addition, County's actions with regard to Illinois Concrete are outside the scope of Allan Block's production and sales agreements with County and Quality. *See In re Hennepin County*, 540 N.W.2d at 502-03.  Finally, for the reasons set forth in the October 17 Report and Recommendation, Allan Block has not raised a genuine issue of material fact as to damages sustained due to lost use of molds.  For these reasons, the Court grants summary judgment to County on Allan Block's claim for breach of the implied covenant of good faith and fair dealing.

> 7.      *Tortious interference with contractual relations*

In Count Six of its Amended Complaint, Allan Block claims that County tortiously interfered with the agreement between Allan Block and Illinois Concrete by inducing Illinois Concrete to sell molds and technology to County instead of returning them to Allan Block. "Minnesota law requires that five elements be established in a claim of tortious interference with a contractual relationship:  '(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages.'"  *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (quoting *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998)).  For the reasons set forth in the October 17 Report and Recommendation, Allan Block has not raised a genuine issue of material fact as to the damages it sustained from County's alleged tortious interference.  The Court therefore dismisses this claim.

8.      *Injunction and fees*

In the event that breach of contract or patent infringement occurred, County contends that Allan Block is not entitled to a permanent injunction that prevents County from making and selling the Victory Block.  County also asserts that Allan Block cannot recover attorney fees under the County Agreements.  Consideration of an award of attorney fees to Allan Block or the entry of a permanent injunction against County at this time is premature, though the Court notes that Allan Block has conceded that it cannot recover its attorney fees under the County Agreements.

**B.      Allan Block's motion**

Allan Block seeks summary judgment on County's affirmative defenses and counterclaims asserting that the '010 Patent and the '236 Patent are invalid due to anticipation or obviousness.  Anticipation is a question of fact.  *Voda v. Cordis Corp.*, 536 F.3d 1311, 1322 (Fed. Cir. 2008).  "Anticipation requires disclosure of each and every claim limitation in a single prior art reference, either explicitly or inherently."  *In re Omeprazole Patent Litig.*, 483 F.3d 1364, 1371 (Fed. Cir. 2007).  Allan Block asserts that County has no evidence to support its anticipation contentions.  In support, Allan Block points to Drysdale's deposition testimony where he states that he did not find a single piece of prior art that contained all elements of the asserted claims.  County does not direct the Court to any evidence that raises a genuine issue of material fact.  The Court therefore concludes that County has not satisfied its burden of demonstrating that the asserted claims of the patents-in-suit are invalid due to anticipation.

Largely reiterating the arguments raised in opposition to County's motion, Allan Block moves for summary judgment on County's affirmative defenses and counterclaims that the '010 Patent and the '236 Patent are obvious.  For the reasons set forth above, the Court denies Allan

Block's motion as to the '236 Patent.  Similar reasoning leads the Court to conclude that summary judgment in Allan Block's favor on County's invalidity assertions regarding the '010 Patent is not warranted.  Finally, the Court is not persuaded that the alleged deficiencies in County's Prior Art Statement warrant summary judgment in Allan Block's favor.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.    County's Motion to Exclude Allan Block's Damages Related to Molds [Docket No. 302] is GRANTED IN PART as set forth in the Report and Recommendation [Docket No. 358].

2.    County's Motion for Partial Summary Judgment [Docket No. 313] is GRANTED IN PART and DENIED IN PART.

3.    Allan Block's Motion for Summary Judgment on Patent Validity [Docket No. 330] is GRANTED IN PART and DENIED IN PART.

4.    County's Motion for Summary Judgment for Counts 7 and 8 of the Amended Complaint [Docket No. 335] is GRANTED.

5.    Count One of the Amended Complaint is DISMISSED insofar as it is based on County's alleged failure to return molds.

6.    Count Four, Count Five, Count Six, Count Seven, and Count Eight of the Amended Complaint are DISMISSED.

7.    County has not satisfied its burden of establishing that the asserted claims of U.S. Patent No. 4,909,010 and U.S. Patent No. 5,484,236 are invalid due to anticipation.

8.    Claims 1, 2, 7, 11, 12, 14, 15, and 16 of U.S. Patent No. 5,484,236 are invalid due to obviousness.

Dated:  December 17, 2008

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge